**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**GREGORY RIVERS**                                                                     **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO.** 3:25-cv-156-CWR-LGI

**MANAGEMENT & TRAINING CORPORATION,**
**and JOHN AND JANE DOES 1-100**                                **DEFENDANTS**

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

*Jury Trial Demanded*

1. This Complaint is brought by GREGORY RIVERS by and through undersigned counsel, against Defendants Management & Training Corporation (hereinafter, "MTC"), and John and Jane Does 1-100.

**JURISDICTION AND VENUE**

2. Jurisdiction is appropriate in federal court pursuant to 28 U.S.C. §§ 1343 and 1331. Original jurisdiction over the subject matter is invoked under 28 U.S.C. § 1331 because a federal question is raised pursuant to 42 U.S.C. § 1983 and the 8th and 14th Amendments to the United States Constitution. This Court has supplemental and pendent jurisdiction for state law claims related to the original jurisdiction claims pursuant to 28 U.S.C. § 1367(a) and *F.R.C.P.* 18(a).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b), as substantial acts and/or omissions that caused Plaintiff's injuries occurred in Lauderdale County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

**PARTIES**

4. Gregory Rivers, (hereinafter, "Plaintiff") is currently an inmate housed at Wilkinson

County Correctional Facility in Woodville, Mississippi. At all times material to this Complaint, Plaintiff was a citizen of the State of Mississippi and an inmate at East Mississippi Correctional Facility ("EMCF"), in Meridian, Lauderdale County, Mississippi.

5. Management & Training Corporation (hereinafter, "MTC" or "Defendant") is a national for-profit prison operator incorporated in Delaware with its principal place of business in Utah. MTC is the third-largest prison management company in the United States, operating 21 correctional facilities in the country, with 17 state correctional department contracts and 7 federal correctional agency contracts. MTC contracted with Mississippi Department of Corrections ("MDOC") for the management and oversight of its prisons' daily operations, under which it had the responsibility to provide humane care and treatment consistent with all constitutional and ACA standards. At all times material herein, MTC managed East Mississippi Correctional Facility ("EMCF"), and the acts, omissions and events giving rise to this Complaint occurred under MTC's management. MTC is subject to the *in personam* jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, at 645 Lakeland East Dr., Suite 101, Flowood, Rankin County, Mississippi 39232.

6. John and Jane Does 1-100 (hereinafter, "Doe Defendants"), are unknown individuals, and/or entities liable to Plaintiff for the acts and omissions as alleged herein. Currently, Plaintiff is ignorant as to the identities of the Doe Defendants, who are unknown MTC officers, employees, agents, and or servants. Plaintiff will amend this Complaint to allege their true names and that each of the fictitiously named Defendants are responsible in some manner and liable to Plaintiff by reason of negligence, wanton and reckless misconduct, breach of warranty and/or another manner whether alleged herein or not, and by such wrongful conduct, each Defendant proximately caused the injury and damage complained of herein. Plaintiff, upon information and belief, asserts

Doe Defendants were officers, agents, servants, and employees of Defendant and acted with permission and consent within the course and scope of said agency and employment.

7. At all times material to this Complaint, Defendants were acting under the color of the law, statutes, customs, ordinances, and usage of the State of Mississippi, pursuant to its contract with Mississippi Department of Corrections.

## FACTS

### *History of Understaffing, Gang Violence, and Inmate Assaults at EMCF*

8. On November 9, 2023, and December 4, 2023, Plaintiff was assaulted by members of the Vice Lord Security Threat Group ("STG") at East Mississippi Correctional Facility ("EMCF"), resulting in injuries that required hospitalization and surgery. Plaintiff's assaults were foreseeable due to systemic issues at EMCF, and these assaults reflect Defendants' ongoing failure to protect inmates from harm, failure to maintain sufficient staff, failure to adequately train and supervise staff, and failure to properly manage the gang population at EMCF.[1]

9. EMCF was designated to house the State's most severely mentally ill inmates and to provide them with a high level of care. *For over a decade,* Defendants have repeatedly been put on notice of rampant gang violence and staff inadequacies resulting in harm and even death to inmates. Defendants had prior documented notice and knowledge of EMCF's severe understaffing, inadequate training and supervision, pervasive violence, gang mismanagement, contraband flow, and lack of medical care, all of which contributed to a heightened risk of harm and death to inmates, including Plaintiff.

---

[1] Understaffing at MTC's prisons have been an ongoing issue for years. In November 2022, Mississippi State Auditor Shad White announced that his office was demanding nearly two million ($2,000,000) dollars from MTC for failing to have adequate staff on duty at Marshall County Correctional Facility. The Marshall Project published that MTC should have repaid $950,000 for vacant positions and unfilled shifts at EMCF between 2013 and 2019. https://www.themarshallproject.org/2020/12/09/no-show-prison-workers-cost-mississippi-taxpayers-millions.

10. Dating back to 2011, violent incidents at EMCF were so common that Lauderdale County Sheriff Billy Sollie asked state officials to assign a full-time investigator to handle EMCF incidents because EMCF was exhausting the sheriff's department's resources.

11. Despite years of instability evidenced by high rates of inmate assaults and deaths, lockdowns, contraband, and rampant gang populations, Defendants *continued* to operate EMCF under such dangerous conditions, showcasing a deliberate indifference to the risk of harm and death to inmates. Defendants' *de facto* policies of understaffing EMCF with inadequately trained and/or supervised guards, delaying and denying access to medical care, and mismanaging gang populations, directly resulted in harm to inmates, specifically the Plaintiff.

12. Proper supervision of inmates to prevent harm is impossible without sufficient staff. Defendants consistently staffed EMCF with poorly trained and supervised officers, resulting in negligent practices that endangered inmates. Defendants' *de facto* policy of understaffing EMCF with inadequately trained and supervised guards was negligent and grossly negligent and was implemented with deliberate indifference to the inmates, specifically Plaintiff.

13. Sound correctional policy mandates that prison officials institute programs to prevent, identify, and manage gang populations. Defendants failed to institute such programs, directly resulting in Plaintiff's injuries. Alternatively, if Defendants did institute any such programs, Defendants failed to apply its measures, or applied such measures with negligence and gross negligence, resulting in Plaintiff's injuries.

14. Formal lawsuits[2] put Defendants on notice of their ongoing failure to protect inmates

---

[2] *See Dockery, et. al v. Epps, et. al*, S.D. Miss., No. 3:13-cv-326-TSL-JMR; *Gipson v. Management & Training Corporation et al*, S.D. Miss., No. 3:16-cv-00624-DPJ-FKB; *Buckley et al v. Management & Training Corporation et al*, S.D. Miss., No. 3:22-cv-00379-KHJ-MTP; *Marsh v. Management & Training Corporation et al*, S.D. Miss., 3:24-cv-00339-TSL-MTP. See also *Walker v. Management & Training Corporation et al*, S.D. Miss., No. 5:14-cv-00098-DCB-MTP; *Bell v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-00039-DCB-MTP; *Hernandez v. Management & Training Corporation et al*, S.D. Miss., No. 5:16-cv-000057-KS-MTP; *Mauk v. Management & Training Corporation et al*, S.D. Miss., No. 5:18-cv-000068-DCB-MTP.

and maintain adequate staffing and training. The facts and circumstances of prior inmate assaults dating back to 2013 are virtually *"copy and paste"* of one another, including Plaintiff's.

15. In 2013, a federal class action lawsuit alleged unconstitutional conditions of confinement in violation of inmates' 8th Amendment rights, specifically, failure to maintain adequate staff, failure to remove weapons and from prisoners, failure to ensure the proper function of safety equipment, and failure to remove prisoners from potentially dangerous situations.[3] Twelve (12) years later, the same issues persist.

16. Defendants' chronic lack of correctional officers and poor staff training resulted in an environment where violence was commonplace. According to expert witness Eldon Vail, EMCF did not have enough correctional officers; "*most of their problems stem from that issue.*" [4] (emphasis added). According to EMCF former Warden Frank Shaw, he *could not guarantee that the prison was capable of performing its most basic function*; guards "do their best" to keep inmates in their cells; and mandatory security posts are filled "if at all possible."[5] (emphasis added).

17. In March 2014, MTC's captain of security at EMCF, Matthew Naidow, testified that EMCF was worse than any prison in which he had worked, describing it as "top 10" in the country for violence. He testified that correctional officers were typically young, female, and easily manipulated by STG inmates, and that staff turnover rates resulted in difficulty/failure to maintain adequately trained guards. Naidow illustrated first-hand knowledge of officers failing to conduct

---

[3] *Jermaine Dockery, David Thompson, Jeffrey Covington, Joseph Osborne, Courtney Galloway, Phillip Fredenburg, John Barrett, Tafforest Chandler, Derrick Hayes, Eric Ward, Christopher Lindsey, Dexter Campbell, Alvin Luckett, James Vann, Benjamin McAbee, and Anthony Evans, on Behalf of Themselves and All Others Similarly Situated v. Christopher Epps in his Official Capacity as Commissioner of the Mississippi Department of Corrections, Gloria Perry in her Official Capacity as Chief Medical Officer for the Mississippi Department of Corrections, Archie Longley in his Official Capacity as Deputy Commissioner for Institutions of the Mississippi Department of Corrections*, S.D. Miss., 3:13-CV-00326.
[4] *Dockery, et. al v. Epps, et. al*, S.D. Miss., 3:13-cv-326.
[5] *Dockery, et. al v. Epps, et. al*, S.D. Miss., 3:13-cv-326.

counts and security checks, describing EMCF as a "fiasco," with inmates moving themselves from one cell to another. According to Naidow, based on 30 years' experience, *failing to do proper counts and security rounds increases inmate violence* because inmates had "more time to plan." United States District Judge Barbour relied heavily on Naidow's testimony in certifying the *Dockery* class action:

> Plaintiffs also submit the deposition of Matthew Naidow, who is the captain of security at EMCF, and who testified, *inter alia*, that prisoner-on-prisoner violence is common place, that security officers are poorly trained, and that staff has aided inmate violence by opening cell doors and by failing to intervene when prisoners are being assaulted.

*Dockery, et al v. Epps, et al*, S.D. Miss., 3:13-cv-326.

18. In 2014, Charles McGrew's murder by his cellmate put Defendants on further notice that failure to conduct required checks resulted in harm and death to inmates, revealing the Defendants' ongoing systemic-wide negligence and deliberate indifference to the safety and well-being of inmates at EMCF.[6]

19. In 2017, MTC's then-Regional Vice President Marjorie Brown acknowledged in her deposition testimony that staff was required to make security checks approximately every 30 minutes to ensure inmates are safe, alive, and well. Defendant's expert, Stephen Huffman, testified that *inmate altercations happen any time, especially in cells,* highlighting the importance of conducting counts and checks. *Defendant's own expert agreed that MTC acted with deliberate indifference by not requiring officers to conduct proper rounds and security checks.* In his thirty-seven (37) years of working on the correctional field, Huffman had not seen a facility continue to be noncompliant in conducting counts for such a long period of time, and as far as what was

---

[6] *Sandra Fay Gipson, as Administratrix of, and Personal Representative on Behalf of the Wrongful Death Beneficiaries of the Estate of Charles Elliot McGrew, Deceased v. Management & Training Corporation and John and Jane Does 1-100*, S.D. Miss., 3:16-cv-624-DPJ-FKB.

reported on the monitoring worksheet, that was not a proper way to run a prison.[7]

20. In 2018, Eldon Vail wrote in his expert report, "…due to the lack of adequate security staffing throughout the prison, EMCF remains an extraordinarily dangerous prison, and continues to place all prisoners at substantial risk of harm." Defendants had *actual notice* of the conditions at EMCF yet continued to operate the facility with insufficient number of correctional officers and inadequately trained staff, which resulted in harm to inmates, specifically the Plaintiff.

21. Defendants were objectively and subjectively aware of understaffing, failure to train and supervise staff, widespread gang violence, dysfunctional locking mechanisms, contraband, and inmate violence, and with deliberate indifference to the safety and well-being of inmates at EMCF, specifically Plaintiff, Defendants ignored these issues and failed to protect Plaintiff from harm. As a direct result of Defendants' deliberate indifference, Plaintiff suffered the damages alleged herein.

### *Knowledge of Risk of Harm*

22. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 21 hereinabove.

23. According to records, Plaintiff renounced his membership as a Vice Lord in 2018. He was discharged from prison in January 2021. On December 6, 2022, Plaintiff's probation was revoked, and he returned to prison. Due to the well-documented history of gang violence at EMCF and knowledge that Plaintiff renounced the Vice Lords, Defendants knew or should have known that Plaintiff was at risk of harm. Defendants failed to protect Plaintiff from the known and obvious risk of harm, failed to train and supervise staff to manage gang-assaults, and subjected Plaintiff to cruel and unusual punishment, resulting in Plaintiff's injuries and damages.

24. According to records, prior to the incidents giving rise to this Complaint, Plaintiff

---

[7] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Stephen J. Huffman, July 28, 2017, Vol. II pp. 38-39.

endured other occurrences of harassment and assaults by Vice Lords because he renounced from the gang in 2018. *Plaintiff's assaults were not isolated events.* Defendants' negligence and deliberate indifference to the safety and well-being of inmates at EMCF, specifically the Plaintiff, directly resulted in Plaintiff's assaults and injuries, which were foreseeable and preventable.

25. Defendants were subjectively aware of a substantial risk of harm to Plaintiff and disregarded that risk. Defendants failed to take the necessary precautions and safety measures to protect Plaintiff from harm and created a breeding ground for violence. Defendants' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates at EMCF, specifically Plaintiff.

*November 2023 Assault*

26. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 25 hereinabove.

27. According to video footage, on November 9, 2023, Plaintiff entered Housing Unit 1B accompanied by one (1) inmate and three (3) correctional officers. Upon information and belief, Vice Lords were directed to attack Plaintiff upon his entry into HU1B. In plain view of surveillance footage, approximately seven (7) Vice Lord inmates rushed toward the Plaintiff as he ran to the second tier of the Unit and into his cell for protection. Defendants and their employees *ignored* the attempted assault without writing so much as an incident report.

28. As inmates rushed toward Plaintiff, the 3 correctional officers escorting Plaintiff exited the Unit, leaving Plaintiff exposed to harm. The group of inmates gathered at Plaintiff's cell door attempting to enter and attack the Plaintiff, in plain view of surveillance footage.

29. Sergeant K. Guster and M. Clay entered Plaintiff's cell after clearing the inmates away from the Plaintiff's cell door. Video footage then shows rapid movement inside the cell for approximately three (3) minutes in which correctional officers assaulted Plaintiff with punches

and kicks, resulting in bruising and bloody nose.

30. Upon information and belief, Defendants failed to adequately supervise inmates in Housing Unit 1B, where Vice Lords attempted to assault Plaintiff. Defendants failed to assign a correctional officer to HU1B post, or the officer assigned to HU1B post failed to observe or ignored video footage which captured the event, or officers facilitated and allowed the attack, and thus failing to protect Plaintiff from harm. Defendants and their employees' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates, specifically the Plaintiff.

31. Defendants and their policymakers ratified the incident by failing to investigate or document the episode.[8] For reasons currently unknown, officers took photos of Plaintiff but failed to write an incident report until after undersigned requested public records related to the incident.

32. On December 16, 2023, Plaintiff's cellmate from November 9, 2023, Edward Ward, wrote a Statement claiming that on November 9, 2023, he alerted officers to an "altercation" started by Plaintiff, and guards addressed the problem by moving Ward to another cell.

33. Video evidence contradicts Ward's statement entirely. Contrary to Ward's statement, the video footage clearly showed that Plaintiff neither created nor initiated any disturbance, and that Ward had no altercation with Plaintiff to report. The Plaintiff merely locked himself inside his cell seeking protection from a gang attack.

34. Sgt. Guster and Clay wrote reports on December 16, 2023, claiming they interviewed Plaintiff and his cellmate about the "altercation." However, video footage shows an inmate exit Cell# 201 less than one (1) minute after officers entered, leaving Plaintiff alone in the cell with the officers who assaulted him, resulting in bruising and bloody nose.

---

[8] After undersigned requested public records relative to the November 9, 2023, assault on December 13, 2023, did MTC and its employees create written incident reports, dated December 16, 2023.

35. The *actual incident* in which the Vice Lords attempted to attack the Plaintiff went without investigation. Sgt. Guster and Clay falsely reported that Plaintiff was the aggressor, in direct contradiction to the video footage.

36. MTC has a documented history of employing compromised correctional officers. Inmates essentially held their own "job fairs," recruiting gang affiliated correctional officers. "All they had to do was find a young girl or young guy on Facebook and recruit them. As long as they didn't have a criminal record, they could get a job. They'd come in, bringing in contraband and stuff, and then get fired or leave."[9]  Gang members even paid for compromised guards to live nearby.[10] According to Naidow's 2017 deposition testimony:

> Q: Did you ever – were you ever able to substantiate that the inmates were recruiting correctional officers?
> A: We did have a couple incidents of officers that were caught up and were found living in some—there's some apartments right down from—right down from the prison in Meridian that were gang affiliated.

*Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, p. 60 lines 11-18.

37. Defendants knew or should have known that Plaintiff's safety and well-being was at risk due to his prior affiliation and denouncement from the Vice Lords. Despite this awareness, Defendants failed to protect Plaintiff from harm and took no corrective action. After November 9, 2023, the Plaintiff remained in Housing Unit 1B, where he was especially vulnerable and at risk of harm. Such actions were negligent, grossly negligent, and with a deliberate indifference to the safety of the inmates, specifically the Plaintiff.

---

[9] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, p. 59 lines 15-25.
[10] *Gipson v. Management & Training Corporation, et al*, S.D. Miss., No. 3:16-cv-624-DPJ-FKB, Deposition of Matthew Naidow, August 4, 2017, pp. 59-61.

### *December 2023 Assault*

38. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 37 hereinabove.

39. On or about December 4, 2023, Plaintiff was assaulted in Housing Unit 1B by Vice Lords, resulting in a broken jaw and facial bones. Plaintiff's assault and injures were a direct result of Defendants' failure to protect Plaintiff from harm, failure to adequately staff EMCF with a sufficient number of trained and qualified guards, failure to properly classify and house inmates, and failure to manage the gang population running the prison.

40. According to video footage, on December 4, 2023, Vice Lords attacked Plaintiff on the top tier of HU1B, beating him with "locks in socks," in full view of surveillance cameras. Surveillance footage of the assault did not fully capture the incident because the video skipped multiple times for reasons currently unknown.

41. Upon information and belief, Defendants failed to adequately supervise inmates in Housing Unit 1B where Vice Lords attacked the Plaintiff. Defendants failed to assign a correctional officer to HU1B post, or the officer assigned to HU1B post failed to observe or ignored video footage which showed Vice Lords attacking Plaintiff, or the officer facilitated and/or allowed the assault. Defendants and their employees' actions and inactions constitute negligence, gross negligence, and deliberate indifference to the safety and well-being of inmates, specifically the Plaintiff. As a result, Plaintiff suffered fractured facial bones, requiring reconstructive surgery.

42. Due to the severity of his injuries, Plaintiff was transported to Rush Hospital at approximately 7:37 p.m. According to Rush Hospital medical records, Plaintiff suffered facial fractures in the jaw including the zygomatic arch and left eye orbital as a result of the attack, requiring surgery on or about December 5, 2023.

43. Plaintiff eventually received his medically necessary facial and jaw surgery on April 1, 2024, four months after his face and jaw were fractured by Vice Lords.

### *Defendants Ignored the Obvious Risk of Harm to Plaintiff*

44. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 43 hereinabove.

45. According to MTC Investigator James McNamee, Plaintiff suffered ongoing harassment and assaults stemming from his renunciation of Vice Lord STG in 2018. According to Investigator McNamee, "ongoing harassment has followed him throughout the prison system and is not exclusive to EMCF."

46. Plaintiff's prior altercations with Vice Lords only bolsters the reality that Defendants knew or should have known of the risk of harm to Plaintiff, and Defendants disregarded the known and obvious risk of harm with deliberate indifference by failing to protect Plaintiff from harm.

47. Regardless of the exclusivity or non-exclusivity of prior altercations, the November 9, 2023, incident should have made Defendants aware that Vice Lords targeted Plaintiff and Plaintiff was at risk of harm. Despite this knowledge, Defendants failed to protect Plaintiff from harm, failed to take corrective measures or discipline inmates and/or officers involved in the November incident, refused to change Plaintiff's housing and/or classification, and refused to investigate the November incident.

48. Despite Defendants' prior knowledge of Plaintiff's risk of harm, Plaintiff was assaulted by Vice Lords on two (2) separate occasions while housed in Housing Unit 1B. With deliberate indifference for the safety and well-being of the inmates at EMCF, Defendants failed to act in a reasonable manner to protect Plaintiff from harm. As a result of Defendant's deliberate indifference to the safety and well-being of inmates at EMCF, the Plaintiff suffered facial fractures in the jaw including the zygomatic arch and left eye orbital, and accompanying damages.

*Defendants Denied and Delayed Access to Timely, Adequate Medical Care*

49. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 48 hereinabove.

50. Prior to Plaintiff's assaults, Defendants were put on notice of violations of inmates' rights by running the prison with (a) insufficient staff to provide adequate medical treatment; (b) long delays in seeing healthcare providers; (c) denial of prescribed medications; (d) denial of treatment for chronic medical conditions and pain management; (e) untimely and insufficient dental and other medical care; (f) extended delays in seeing outside specialists; and (g) denial of corrective surgeries and treatment plans recommended by outside specialists.[11] Still, EMCF *continued* to delay and deny medical care to inmates, specifically the Plaintiff.

51. Plaintiff endured a prolonged period of suffering as a result of Defendants' denial and delay in providing access to corrective surgery. Defendants deprived Plaintiff of his 8th Amendment right to adequate and timely medical care, and the denial constituted a deliberate indifference to Plaintiff's serious medical needs. Defendants delayed Plaintiff's maxillofacial surgery for four (4) months, reportedly because of 'swelling.'

52. According to infirmary records, Plaintiff was to follow up for maxillofacial surgery at University of Mississippi Medical Center (UMMC) on December 5, 2023. According to records, on December 5, 2023, LPN Brookshire was notified to call UMMC regarding Plaintiff's surgery. One hundred nineteen (119) days later, on April 1, 2024, Plaintiff finally had maxillofacial surgery at UMMC to repair fractures to his zygomatic arch and left eye orbit.

## § 1983 CAUSES OF ACTION

53. Plaintiff incorporates herein all allegations set forth above in Paragraphs 1 through 52.

54. Defendants and their employees knew or should have known that Plaintiff was at risk

---

[11] *Dockery, et. al v. Epps, et. al*, S.D. Miss., 3:13-cv-326.

of harm and was targeted by Vice Lords. MTC officials knew that Plaintiff renounced Vice Lord STG in 2018. Instead of protecting Plaintiff from harm, MTC placed Plaintiff amongst the Vice Lords and continued to house him in the same unit after Vice Lords attempted to attack Plaintiff in November 2023, directly causing Plaintiff's assault on December 4, 2023, and damages.

55. By and through Defendants' deliberate indifference to the safety and well-being of the Plaintiff on November 9 and December 4, 2023, and the establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants violated the clearly established constitutional rights of the Plaintiff, including but not limited to:

   a) Right to be free from cruel and unusual punishment under the 8th and 14th Amendments;

   b) Right not to be deprived of liberty without due process of law;

   c) Right to be safe and protected from injuries while in Defendants' custody;

   d) Right to be protected by the correctional officers while under their control;

   e) Right to be free from excessive and unreasonable force; and

   f) Right to timely and adequate medical treatment.

56. Defendant John Does 1-100's actions were not objectively reasonable. At all times, Doe Defendants were acting under the color of state law.

57. As a direct and foreseeable result of Doe Defendant 1-100's actions, Plaintiff suffered damages including but not limited to physical injuries, emotional distress, mental anguish, and pain and suffering.

58. Defendant MTC, by and through Doe Defendants in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Plaintiff and other EMCF inmates. MTC maintained and operated

EMCF in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of inmates in every respect. These policies created unconstitutional conditions of confinement.

59. Said unwritten policies, customs, and practices include but are not limited to:

a) Failing to adequately staff EMCF with trained and qualified guards assigned to the housing units and allowing EMCF to be understaffed.

b) Inadequate and improper procedures and practices in screening, hiring, training, supervising, and disciplining officers who practice, condone, or use excessive force upon EMCF inmates, including the Plaintiff, in violation of his constitutional rights;

c) Inadequate and improper procedures, policies, and practices for investigating improper activities by correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations which permits guards to aid and abet gang members housed at EMCF;

d) Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against correctional officers in need of re-training, corrective measure, reassignment or other non-disciplinary actions, through a positive or early warning system designed to prevent violations of inmates' rights;

e) Condoning and allowing EMCF correctional officers to allow and/or facilitate inmate assaults;

f) Failing to institute proper gang management policies and procedures;

g) Failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to EMCF officials;

h) Failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF;

i) Allowing inmates to compromise cell doors and permitting inmates to leave their cells any time, even when they are supposed to be on lockdown, which contributed to the atmosphere of violence which existed on the dates of Plaintiff's assaults;

j) Failing to make proper rounds/cell checks within the established guidelines to ensure inmates' safety;

    k)    Improper classification and housing of inmates including the failure to separate inmates with STG history and documented assaults; and

    l)    Regularly denying and delaying access to timely and adequate medical care and treatment, including corrective surgeries ordered by outside specialists.

60. Upon information and belief, MTC, through Doe Defendants 1-100, had prior knowledge that Plaintiff was at risk of harm and Vice Lords planned to carry out gang attacks, or that such attacks were imminent, yet Defendants chose to take no action to prevent the assaults. Defendants were deliberately indifferent to the safety of EMCF inmates, including Plaintiff. As a direct and foreseeable result of actions and inactions of Defendants MTC and Doe Defendants 1-100 to take necessary steps to prevent the assaults, Plaintiff suffered the harms alleged herein.

61. Correctional officers, including Doe Defendants acted, or failed to act, in accordance with official policies, customs and practices of MTC, or at the direction of and with approval of these officials in depriving Plaintiff of his rights described herein. The policies, practices and customs were moving forces in Defendant and its employees' action and inaction, with deliberate indifference to Plaintiff's constitutional rights, welfare, and safety.

62. As a direct and foreseeable result of Defendants' actions, Plaintiff suffered damages including but not limited to, severe physical injuries including facial fractures in the jaw including the zygomatic arch and left eye orbital, reconstructive surgery, delayed medical treatment, pain and suffering, and emotional distress.

### NEGLIGENCE/GROSS NEGLIGENCE

63. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 62 hereinabove.

64. At all times relevant, Defendant and Doe Defendants, as their employees, had a duty to exercise ordinary care for the prisoners at EMCF, including Plaintiff. MTC and Doe Defendants breached that duty by failing to use the ordinary care that a reasonable person would use to avoid

and prevent injury to others, i.e. in the case sub judice, by failing to act appropriate based upon their prior awareness of the risk of harm to the Plaintiff as evidenced by Plaintiff's prior incidents due to his renouncing the Vice Lord STG in 2018 – the failure of which led directly to the damages sustained by Plaintiff. This breach was so egregious as to amount to gross negligence.

65. Defendants and its employees were also negligent by failing to monitor the Plaintiff's cell and/or Housing Unit on a routine basis and to conduct security checks as required. Defendants failed to provide appropriate, reasonable and necessary supervision to avoid and prevent injury to inmates, specifically the Plaintiff. Defendants understaffed the EMCF and did not manage the gang population and violent atmosphere with adequate or trained and qualified guards.

66. Had Defendants performed security checks in accordance with proper procedures, Plaintiff's attacks would not have occurred. Had Defendants and its employees properly supervised inmates at EMCF, Plaintiff's assaults would have been prevented or interrupted, and Plaintiff would not have suffered fractures in his facial bones, requiring surgery.

67. Plaintiff's assaults and injuries were the reasonably foreseeable outcome of Defendants and their employees' acts and omissions. These acts and/or omissions were substantial factors in bringing about the Plaintiff's injuries and accompanying damage suffered.

**NEGLIGENT AND GROSSLY NEGLIGENT HIRING AND SUPERVISION**

68. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 67 hereinabove.

69. Plaintiff alleges that Defendant MTC negligently, or with gross negligence, hired, supervised and retained its employees and agents, inter alia, by a) failing to care for and ensure Plaintiff's health, safety, and well-being while at EMCF; b) failing to properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and c) was

otherwise negligent or grossly negligent in their care and treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR

70. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 69 hereinabove.

71. Defendant MTC and Doe Defendants acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Plaintiff's assaults. At all times relevant, Defendants owed a duty to Plaintiff to ensure his health, safety, and well-being, and Defendants breached this duty. The actions and inactions of Defendant and/or Doe Defendants led directly to the injuries suffered by the Plaintiff. MTC, as Doe Defendants' employers, are liable for their employees' actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

72. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 71 hereinabove.

73. Defendant MTC and Doe Defendants 1-100 acted in complete disregard for the Plaintiff's safety by acting in a grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

74. Defendants' actions exhibited gross negligence and direct disregard for the safety of Plaintiff. Punitive damages should be awarded against Defendants. Defendants' tortious actions caused Plaintiff's physical injuries, emotional distress, mental anguish, and pain and suffering.

## PRAYER FOR RELIEF

Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following relief:

A. Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

  B.  Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

  C.  Payment of medical expenses;

  D.  Reasonable attorney's fees and all costs of this court;

  E.  Pre and post judgment interest; and

  F.  Such other general and specific relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 6th day of March 2025.

### GREGORY RIVERS

BY: _____
COURTNEY D. SANDERS


MERRIDA (BUDDY) COXWELL (MB# 7782)
COURTNEY D. SANDERS (MB# 106444)
**COXWELL & ASSOCIATES, PLLC**
500 North State Street
Jackson, Mississippi 39201
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
merridac@coxwelllaw.com
courtneys@coxwelllaw.com


CHARLES R. MULLINS (MB# 9821)
**MULLINS LAW FIRM**
1146 Lyncrest Avenue
Jackson, Mississippi 39202
(P): 769-216-8373
chuck@chuckmullinslaw.com

*Attorneys for Plaintiff*